UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
PATRICK HAKOS,                                  :    CASE NO. 1:13-CV-01427
                                                :
       Plaintiff,                               :
                                                :
 v.                                             :    OPINION & ORDER
                                                :    [Resolving Doc. 32]
JASON DEMUTH,                                   :
                                                :
       Defendant.                               :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      Plaintiff Patrick Hakos says that Defendant Jason Demuth used excessive force against him in violation of his Fourth Amendment rights. While arresting Hakos, Demuth placed Hakos in handcuffs and left them on for approximately 22 minutes. As a result of the handcuffing, Hakos has lost partial feeling in his hand. Hakos now sues Demuth under 42 U.S.C. § 1983.[1] Defendant Demuth moves for summary judgment,[2] which Plaintiff Hakos opposes.[3] For the reasons that follow, the Court **GRANTS** Defendant Demuth's motion for summary judgment.

**I. Factual and Procedural Background**

      On July 1, 2012, at around 2:45 a.m., Defendant Jason Demuth, a sergeant with the Ohio State Highway Patrol, stopped Plaintiff Patrick Hakos's and his wife's truck for failing to use a turn signal during a right hand turn.[4] During the stop, Demuth observed signs that Hakos was driving while impaired and conducted field sobriety tests and a breath test that recorded a blood-alcohol

---

[1] Doc. 21.
[2] Doc. 32.
[3] Doc. 34.
[4] Doc. 32-4, Hakos Dep. at 5:20-25.

Case No. 1:13-CV-01427
Gwin, J.

concentration of .110.[5]

At 2:55 a.m., Demuth arrested Hakos for operating a motor vehicle while impaired and, at 2:56 a.m., placed Hakos in handcuffs.[6] A few seconds after Demuth placed Hakos in handcuffs, Hakos said something to Demuth about the handcuffs.[7] Demuth responded, "Yeah, I didn't look. You're not going to be in there very long, it's just going to be uncomfortable for a little while."[8]

After reading Hakos his *Miranda* rights and searching him, Demuth told Hakos that the backseat of the patrol car would be tight and that Hakos should position himself however he needed to be comfortable.[9] After getting into the backseat, Hakos told Demuth, "Really, I'm not going to give you any trouble if you want to take these off."[10] Demuth said that Highway Patrol policy was to keep the handcuffs on.[11] In response, Hakos said, "Oh, okay. That's fine."[12]

Demuth then gave Hakos's wife sobriety tests to ensure that she could drive Hakos's truck to the patrol station.[13] Demuth then drove Hakos to the patrol station.[14] During the drive, Plaintiff Hakos audibly sighed several times. After arriving at the patrol station, Defendant Demuth used a metal detector on Hakos and took him into the station.[15] A few seconds after entering the station,

---

[5] Doc. 32-5 at 3 (arrest report).
[6] Doc. 33, Exhibit B - Dashcam Video at 2:55-56. For ease of reference, all citations to the Dashcam Video will be to the time-stamp accompanying each frame that corresponds to the time of day.
[7] *Id.* at 2:56; Doc. 32-2, Demuth Dep. at 21:12-16; Doc. 32-4, Hakos Dep. at 10:8-22.
[8] Doc. 33, Exhibit B - Dashcam Video at 2:56. The parties both write that Demuth merely said, "Yeah . . . you're not going to be in there very long [. . . .]" *See* Doc 32 at 4; Doc. 34 at 7. However, the Court has reviewed the audio, and taken in the light most favorable to Plaintiff Hakos, Demuth also said, "I didn't look."
[9] Doc. 33, Exhibit B - Dashcam Video at 2:57.
[10] *Id.* at 2:58.
[11] *Id.*
[12] *Id.*
[13] *Id.* at 2:59-3:03.
[14] *Id.* at 3:03-14.
[15] *Id.* at 3:14-17.

Case No. 1:13-CV-01427
Gwin, J.

at around 3:18 a.m., Demuth removed the handcuffs.[16] In total, Hakos had been in handcuffs for approximately 22 minutes.

As a result of the handcuffing, Plaintiff Hakos sustained "an injury to the superficial radial nerve or its branches in the right wrist."[17] This injury causes radial sensory neuritis, or Wartenberg's Syndrome.[18] For Plaintiff Hakos, this has meant he experiences numbness, hypersensitivity, and allodynia—"a physical finding characterized by a normally benign or pleasant stimulus being perceived as a painful or noxious one."[19]

On June 28, 2013, Plaintiff Hakos sued Defendant Demuth and several other defendants on a variety of claims relating to his July 1, 2012, arrest.[20]

On December 3, 2013, Plaintiff filed an amended complaint that abandoned all defendants and claims except for an excessive force claim against Defendant Demuth.[21]

On January 6, 2014, Defendant Demuth moved for summary judgment on the ground that he is entitled to qualified immunity.[22] Plaintiff Hakos opposes the motion.[23]

## II. Legal Standard

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings,

---

[16] Doc. 33, Exhibit D - Booking Video, Title "Jul/1/12 3:40AM L1 EP." For some reason, the Booking Video time-stamp does not correspond to the Dashcam Video time-stamp. However, this fact is irrelevant to the total time Hakos was in handcuffs.
[17] Doc. 34-2 at 2.
[18] *Id.*
[19] *Id.* at 1.
[20] Doc. 1.
[21] Doc. 21.
[22] Doc. 32.
[23] Doc. 34.

-3-

Case No. 1:13-CV-01427
Gwin, J.

the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[24] The moving party must demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[25] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[26] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[27] But the Court will view the facts and all reasonable inferences from those facts in favor of the non-moving party.[28]

**B.    Qualified Immunity**

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory constitutional rights of which a reasonable person would have known."[29] This affirmative defense requires a plaintiff to show that (1) his rights were violated and (2) the rights were clearly established.[30] The Court need not consider both prongs of the test if one prong will resolve the case.[31]

For a right to be clearly established, the plaintiff must show that "it would be clear to a

---

[24] *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).
[25] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[26] *See* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[27] *Matsushita*, 575 U.S. at 586.
[28] *Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2004).
[29] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[30] *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).
[31] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

-4-

Case No. 1:13-CV-01427
Gwin, J.

reasonable officer that his conduct was unlawful in the situation he confronted."[32] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[33]

### C. Excessive Handcuffing

"The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure."[34] To prove an excessive handcuffing claim at the summary judgment stage, the plaintiff must show "(1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing."[35]

Although this test shows when a plaintiff sufficiently establishes a constitutional violation at summary judgment, this Court has previously summarized the Sixth Circuit case law on when the right to be free from excessive handcuffing is clearly established: "The Sixth Circuit has held that 'a generalized right to be free from unduly tight handcuffing is clearly established,' but a court must conduct a 'more particularized inquiry.' [The plaintiff] must show that [the officer's] actions were 'objectively unreasonable given the circumstances' of her arrest."[36]

### III. Discussion

The Court begins its analysis of Demuth's right to qualified immunity by seeing whether a triable issue exists as to whether Demuth violated Hakos's clearly established constitutional rights.

---

[32] *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *rev'd on other grounds*, *Pearson*, 555 U.S. at 236.
[33] *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).
[34] *Morrison v. Bd. of Trs. Of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009).
[35] *Id.*
[36] *Frieg v. City of Cleveland*, 1:12-CV-02455, 2013 WL 3873950, at *3 (N.D. Ohio July 25, 2013) (footnotes and citations omitted).

Case No. 1:13-CV-01427
Gwin, J.

The parties do not dispute that Defendant Demuth did not loosen Plaintiff Hakos's handcuffs or that Plaintiff Hakos suffered a hand injury as a result of the handcuffing. The parties dispute whether Plaintiff Hakos complained about the tightness of the handcuffs in such a way that Defendant Demuth's failure to loosen the handcuffs was "objectively unreasonable."

Based on the facts viewed in the light most favorable to Plaintiff Hakos as the non-moving party, there are three potential communications from Hakos to Demuth that could have placed Demuth on notice of Hakos's pain: (1) Hakos's comment about the handcuffs that caused Demuth to respond, "Yeah, I didn't look. You're not going to be in there very long, it's just going to be uncomfortable for a little while";[37] (2) Hakos's promise to be well-behaved if Demuth would take off the handcuffs; and (3) Hakos's sighs during the drive to the patrol station.

The last two communications are not sufficient to make Demuth's failure to loosen the handcuffs "objectively unreasonable given the circumstances." With respect to promise to be well-behaved, a reasonable officer could have concluded that Hakos wanted the handcuffs off in order to get more comfortable in the back of the patrol car. Moreover, once Demuth explained the Highway Patrol's policy, Hakos acquiesced, saying, "Oh, okay. That's fine."[38] The fact that Hakos did not mention the tightness of the handcuffs means that a reasonable officer would not have necessarily connected the tightness of the handcuffs to the request for them to be removed.

Hakos's sighs were also ambiguous. Hakos could have been uncomfortable from being in the backseat while handcuffed or could have been disappointed in having been arrested for drunk driving. Even put together with Hakos's request for the handcuffs to be taken off, a reasonable

---

[37] Doc. 33, Exhibit B - Dashcam Video at 2:56.
[38] *Id.* at 2:58

-6-

Case No. 1:13-CV-01427
Gwin, J.

officer would not know that Hakos was in pain because of the handcuffs.

This leaves Hakos's first comment to Demuth about the handcuffs. The parties do not dispute that Hakos mentioned something about the tightness of the handcuffs. But the parties do dispute exactly what Hakos told Demuth.

In his deposition, Plaintiff Hakos testified that he told Defendant Demuth that the handcuffs were too tight.[39] However, Hakos testified he did not explicitly tell Demuth that he was in pain or numb for two reasons. First, Hakos says Demuth "almost cut [him] off. He said they won't be on that long or -- just didn't want to get into an argument or cause trouble."[41] And second, Hakos says he thought that saying the handcuffs were too tight was the same as telling Demuth he was in pain or numb.[42]

In a declaration filed with his opposition to Demuth's motion for summary judgment, Hakos says that he immediately "verbally indicated" to Demuth the handcuffs were causing him "extreme pain" and that he twice "indicated" that the handcuffs were causing him "pain/numbness," including the time he promised Demuth he would be well-behaved.[43]

The Court will not consider Hakos's declaration in ruling on the motion for summary judgment. First, to the extent that the declaration represents what Hakos believed he was indicating to Demuth, the declaration is irrelevant. In determining whether Demuth is entitled to qualified immunity, the Court must consider what Demuth knew or should have known at the time of the incident, not what Hakos believed he communicated to Demuth.

---

[39] *E.g.*, Doc. 32-4, Hakos Dep. at 10:8-15.
[41] *Id.* at 10:20-22.
[42] *Id.* at 10:23-24, 11:20-21, 23:8-14,
[43] Doc. 34-1 at 1 ¶¶ 4-5

Case No. 1:13-CV-01427
Gwin, J.

Second, to the extent that Hakos means he actually told Demuth about the pain or numbness, the video and his deposition contradict the declaration. When Hakos promised Demuth he would be well-behaved if Demuth took the handcuffs off, the audio from the dashboard camera clearly reveals that Hakos did not mention that the handcuffs were tight, that he was experiencing any numbness, or that he was in pain.

In his deposition, Hakos testified that he did not explicitly tell Demuth that he was in pain or numb because he felt cut off and because he thought telling Demuth the handcuffs were too tight was the same as telling him he was in pain or numb.

"[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity."[44]

Accordingly, the facts properly before the Court show that Hakos told Demuth the handcuffs were "too tight" immediately after the Demuth put the handcuffs on and did not mention that the handcuffs were tight again.

In light of the Sixth Circuit's *Fettes v. Hendershot*[45] decision, the Court cannot conclude that Demuth's failure to loosen the handcuffs was objectively unreasonable. In *Fettes*, the Sixth Circuit held that "a constitutional requirement obligating officers to stop and investigate each and every utterance of discomfort and make a new judgment as to whether the handcuffs are 'too tight' is neither reasonable nor clearly established.'"[46] In that case, the court affirmed a grant of summary

---

[44] *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *see also Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).
[45] 375 F. App'x 528 (6th Cir. 2010).
[46] 375 F. App'x at 533.

-8-

...

Case No. 1:13-CV-01427
Gwin, J.

judgment to the defendants, even when the plaintiff had complained that the handcuffs were hurting him, because of the short duration of the trip, adherence to police protocol, and the absence of egregious or malicious conduct.[47]

Demuth assumed that he would be able to get Hakos to the patrol station quickly. And Hakos did not tell him that he was in pain or feeling numb. Moreover, Hakos only mentioned the handcuffs one more time and accepted Demuth's statement that he could not remove the handcuffs; Hakos even told Demuth, "That's fine."[48] Accordingly, the Court does not find that as a matter of law Demuth acted objectively unreasonable given what he knew at the time.

Therefore, because Plaintiff Hakos cannot show that a reasonable officer would clearly know to loosen the handcuffs, he cannot show that Defendant Demuth violated his clearly established rights. And Defendant Demuth is entitled to qualified immunity.

### IV. Conclusion

For the reasons above, the Court **GRANTS** Defendant Demuth's motion for summary judgment.[49] The Court **DISMISSES WITH PREJUDICE** Plaintiff's claim against Demuth. This case is **DISMISSED**.

IT IS SO ORDERED

Dated: February 10, 2014          s/ *James S. Gwin*
                                  JAMES S. GWIN
                                  UNITED STATES DISTRICT JUDGE

---

[47] *Id.*
[48] Doc. 33, Exhibit B - Dashcam Video at 2:58.
[49] Doc. 32.